UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

BARBARA ANN CATO,
    Plaintiff

v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,
    Defendant

Case No. 3:17-cv-00382
Chief Judge Crenshaw
Magistrate Judge King

**REPORT AND RECOMMENDATION**
To The Honorable Waverly D. Crenshaw, Jr., Chief Judge

Plaintiff filed a complaint seeking judicial review, pursuant to 42 U.S.C. § 405(g), of the final decision of the Commissioner denying her claim for Social Security disability benefits. (Docket # 1). The Commissioner filed an electronic copy of the administrative record. (Docket # 11). Plaintiff filed her First Motion for Judgment on the Record, along with a supporting memorandum of law. (Dockets # 15 and 16). The Commissioner responded in opposition to Plaintiff's motion. (Docket # 17). The matter is ripe for determination.

On March 1, 2018, the Court referred the matter to the undersigned Magistrate Judge pursuant to 28 U.S.C. §§ 631 and 636 and Administrative Order No. 24. Section 631 authorizes designation of magistrate judges to serve in districts adjoining the district for which they were appointed. Administrative Order No. 24 was entered on June 12, 2017, and signed by the Chief Judges for the Middle District of Tennessee and the Western District of Kentucky. Section 636 authorizes magistrate judges to submit reports and recommendations to district judges on any case-dispositive matter.

The Magistrate Judge finds the administrative law judge's (ALJ's) decision was supported by substantial evidence and was in accord with applicable legal standards. The RECOMMENDATION, therefore, will be that the Court DENY Plaintiff's First Motion for Judgment on the Record (Docket # 15); AFFIRM the Commissioner's final decision; and DISMISS Plaintiff's complaint.

1

### The ALJ's decision

In January 2016, the ALJ issued the Commissioner's final decision denying Plaintiff's claim for supplemental security income (SSI) benefits pursuant to Title XVI of the Social Security Act, pursuant to the familiar five-step sequential evaluation process.

1. The ALJ found that Plaintiff has not engaged in substantial gainful activity since January 2014, when she filed her application for benefits. (ALJ's decision, Administrative Record (AR), p. 12).
2. The ALJ found that Plaintiff suffers from the following "severe," or vocationally significant, impairments: osteoarthritis, asthma, and hypertension. (AR, p. 13).
3. The ALJ found that none of these impairments satisfies the medical criteria of any impairment listed in Appendix 1 of the regulations. (AR, p. 14).

As required in all cases that advance beyond Step 3, the ALJ determined Plaintiff's residual functional capacity (RFC), finding that her impairments restrict her to a limited range of "light" work as defined in 20 C.F.R. § 416.967(b). (AR, pp. 14-15).

4. The ALJ found that Plaintiff is unable to perform her past relevant work. (AR, p. 20).
5. The ALJ found that Plaintiff is not disabled because, considering her age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she can perform. AR, p. 21.

### Plaintiff's arguments

Plaintiff presents three arguments (in her own words):

1. The ALJ erred by failing to properly consider all of the Plaintiff's impairments and by failing to provide sufficient reasons for not finding these impairments to be severe impairments.
2. The ALJ erred by failing to properly consider the opinion of Consultative Examiner Dr. Bruce Davis.
3. The ALJ erred by failing to include a function-by-function assessment in the RFC assessment as required by SSR [Social Security Ruling] 96-8p.

(Docket # 16, p. 1).

For analytic purposes, the Magistrate Judge shall first consider Plaintiff's second argument, which contains two sub-arguments labeled "2(a)" and "2(b)."

### 2(a). The ALJ did not err in giving no weight to Dr. Davis' opinion.

Plaintiff argues that the ALJ erred by failing to properly consider the opinion of Consultative Examiner Dr. Bruce Davis.

On March 13, 2014, as part of the evaluation of her disability claim, Plaintiff was examined at the request of the Commissioner by Bruce A. Davis, M.D. Dr. Davis diagnosed the following impairments:

>DIAGNOSES
>
>1. Overweight (body mass index > 25 kg/m2)
>
>2. Cardiovascular disease: hypertension, chest pain
>
>3. Lung disease: recently diagnosed bronchial asthma
>
>4. Musculoskeletal disease: degenerative arthritis, hand injury/surgery
>
>5. Hematologic disease: anemia

(AR, p. 275).

Dr. Davis opined that Plaintiff suffers from the following limitations:

>MEDICAL ASSESSMENT/WORK-RELATED PHYSICAL ACTITIVITES
>
>EXERTIONAL LIMITATIONS
>
>Lift/carry, Push/Pull: 10 lbs occasionally; 10 lbs frequently
>
>Sit: 1-2 hours at one time; 4-6 hours in an 8 hour work day
>
>Stand/walk: ½ hour at one time; 3-4 hours in an 8 hour work day
>
>MANIPULATIVE LIMITATIONS
>
>Reaching/Handling: limited finger dexterity, forceful pinch/grip
>
>POSTURAL/ENVIRONMENTAL LIMITATIONS: limited climbing, uneven surfaces, extreme heat, irritating inhalants

(AR, p. 272).

3

The ALJ gave "no weight" to Dr. Davis' diagnoses and limitations, finding them to be "inconsistent with the findings he obtained in his examination[1] and inconsistent with the other medical evidence in [the administrative] file." (ALJ's decision, AR, p. 19).

Although an ALJ must consider an examining-source opinion (such as Dr. Davis'), the ALJ need not give such an opinion that "special degree of deference" owed a treating physician's opinion. *See Barker v. Sec'y of Health & Human Servs.*, 40 F.3d 789, 794 (6th Cir. 1994) ("Dr. Ruff examined Mr. Barker on only one occasion, and the rationale of the treating physician doctrine simply does not apply here. Dr. Ruff's report was entitled to no special degree of deference"); *Austin v. Comm'r of Soc. Sec.*, No. 17-1982, 2018 WL 1254923 (6th Cir. Mar. 12, 2018) (same) (citing *Barker*).

Due to a lack of supporting examination findings in Dr. Davis' report,[2] the ALJ had an adequate basis for giving Dr. Davis' opinion no weight.

### 2(b). The ALJ did not err in discounting Dr. Lambert's opinion.

On March 14, 2014 (the day after Dr. Davis' physical examination), psychologist Dorothy Lambert, Ph.D., examined Plaintiff at the request of the Commissioner. Dr. Lambert conducted a clinical interview and mental status examination and opined that "[u]nfortunately, during the mental status examination, [Plaintiff] may not have put forth her best effort, so her abilities also cannot be determined." (AR, p. 282). Notwithstanding this caveat, Dr. Lambert speculated that Plaintiff:

---

[1] Specifically, the ALJ found that Dr. Davis observed that Plaintiff has: "… blood pressure of 120/80. She got on and off the exam table without difficulty. She exhibited finger pain and slow fist making with reduced grip strength but without atrophy or swelling and with full range of motion. She had no back pain, swelling, or tenderness. She exhibited knee tenderness, no other deformity, no clubbing and normal but slow gait. However, Dr. Davis opined she had substantial sitting limitations with no explanation or supporting evidence. In addition, he opined that she could only stand or walk for thirty minutes at a time but offered no supporting evidence for such an extreme limitation." (Decision at AR, p. 18 referencing observations at AR, pp. 273-275).

[2] The most significant findings in Dr. Davis' report pertained to Plaintiff's knee tenderness, incomplete squatting, and slow gait maneuvers. (AR, p. 274). These findings, however, are attributable to injuries Plaintiff sustained from a recent fall she reported to Dorothy Lambert, Ph.D., on March 14, 2014. (AR, p. 279). Because Plaintiff likely recovered from these injuries, the ALJ was not obliged to factor into his RFC the limitations due to the injuries. *See* 42 U.S.C. § 423(d)(1)(A) (To be disabling, a limitation must have "lasted or can be expected to last for a continuous period of not less than 12 months").

4

> … may be somewhat impaired in the ability to understand and remember short work-like procedures and locations, especially of a mathematic nature, but that cannot be determined. She may be markedly impaired in concentration and persistence but that also cannot be determined. She may be moderately impaired in interacting with others due to irritability. She may be moderately to markedly impaired in the ability to adapt to changes when things do not go her way. She may not be able to manage her own finances due to possible impaired mathematic ability, but that cannot be determined either.

(AR, p. 282).[3]

The ALJ properly discounted Dr. Lambert's speculative "may be" opinions in light of Dr. Lambert's own concern that Plaintiff may not have been putting forth her best effort. (ALJ's decision, AR, p. 19).[4]

**1. The ALJ's Step 2 severity finding was, at worst, harmless error.**

Plaintiff argues that the ALJ erred by failing to properly consider all of her impairments and by failing to provide sufficient reasons for not finding these impairments to be severe impairments.

As noted above, the ALJ found that Plaintiff suffers from "severe," or vocationally significant, osteoarthritis, asthma, and hypertension. (AR, p. 13). Plaintiff argues that the ALJ also should have found that she suffers from "severe" degenerative arthritis, left thumb disorder, chest pain, anemia, and bilateral visual disturbance. (Docket # 16, p. 6 referencing Dr. Davis' diagnoses at AR, p. 275).

An ALJ need not scrutinize all diagnosed impairments and properly label each as "severe" or "non-severe" at the second step of the sequential evaluation process. *Jackson v. Comm'r*, No. 3:14–cv–01996, 2018 WL 577245, at *10 (M.D. Tenn. Jan. 5, 2018). Indeed, even a demonstrably erroneous

---

[3] According to the ALJ, the Commissioner gave Plaintiff a second chance to fully particulate in a psychological consultative examination and scheduled a second psychological exam, with Senior Psychological Examiner Robert Doran, M.A. (AR, p. 19). Mr. Doran declined to diagnose any impairment because it was his "impression that she did not put forth her best effort during the mental status portion of the evaluation." (AR, p. 314). Mr. Doran opined that Plaintiff is likely only "mildly limited" in her abilities to understand and remember; sustain concentration and persistence; interact with others; and adapt to changes/requirements. (*Id.*) The ALJ gave Mr. Doran's opinion "great weight because it accurately reflects the impression left by [Plaintiff's] forms and testimony." (AR, p. 19).

[4] Plaintiff's counsel makes additional arguments in which counsel refers to Plaintiff as "he" and to his "basketball scholarship at Vol. State," etc. The Magistrate Judge will not address these arguments because they appear to be based on counsel's confusing the facts of this case with those of *Mullins v. Comm'r*, No. 3–14–1077, 2015 WL 3397965 (M.D. Tenn. May 26, 2015).

5

finding of impairment non-severity is harmless, so long as the ALJ identified at least one "severe" impairment and properly advanced the evaluation process. *Maziarz v. Sec'y*, 837 F.2d 240, 244 (6th Cir. 1987); *see also Anthony v. Comm'r*, 266 F. App'x 451, 457 (6th Cir. 2008) (Because the ALJ must determine a claimant's RFC at subsequent steps of the evaluation process based on the combined effect of all severe and non-severe impairments, it is "legally irrelevant" whether an ALJ labels a particular impairment as "severe" at Step 2).

The ALJ acknowledged that Plaintiff suffers from "severe" osteoarthritis, asthma, and hypertension impairments. Because Plaintiff has not shown that any additional impairment diagnosed by Dr. Davis (or mentioned in the administrative record) requires functional restrictions in excess of those contemplated by the ALJ's RFC finding,[5] any incompleteness in the ALJ's list of "severe" impairments was, at worst, harmless error.[6]

### 3. The ALJ's RFC finding reflects an adequate function-by-function assessment.

Plaintiff argues that the ALJ's RFC finding[7] does not reflect an adequate function-by-function assessment as required by Soc. Sec. Rul. 96-8p, 1996 WL 374184.[8] The argument is unpersuasive

---

[5] More specifically, Plaintiff has not shown that there is any substantive difference between the "osteoarthritis" found by the ALJ and the "degenerative arthritis" and "left thumb disorder" noted by Dr. Davis. Dr. Davis did not indicate that the "chest pain" or "anemia" results in specific limitation. The bilateral visual disturbance (e.g., temporary blurring) urged by Plaintiff appears to be associated with her hypertension, which the ALJ did find to be "severe." The ALJ found that Plaintiff has no "severe" visual (i.e., permanent acuity) limitation. (AR, p. 15).

[6] Additionally, to the extent Plaintiff bases the existence of these extra impairments on Dr. Davis' diagnoses, her argument is unpersuasive because it has already been shown (argument 2(a)) that the ALJ did not err in giving no weight to Dr. Davis' opinion.

[7] The ALJ found that Plaintiff can: "... occasionally lift and or carry up to twenty pounds and can frequently lift and or carry no more than ten pounds. She can stand and or walk for a total of about six hours during an eight-hour day and can push or pull both hand and foot controls bilaterally without any limitations other than those weight limitations for lifting and carrying. She has no postural limitations. She has no limitations in reaching. She has no limitations with regard to feeling. However, she can perform no more than frequent bilateral handling and fingering, which is, in other words, gross and fine manipulations. She has no visual or communicative limitations and no environmental limitations except she must avoid concentrated exposure to pulmonary irritants." (AR, pp. 14-15).

[8] Specifically, Soc. Sec. Rul 96-8p requires that: "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis…. Exertional capacity addresses an individual's limitations and restrictions of physical strength and defines the individual's remaining abilities to perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, and pulling. Each function must be considered separately…. In assessing RFC, the adjudicator must

because it is generic, conclusory, and fails to identify any particular contested issue. *See Delgado v. Comm'r*, 30 F. App'x 542, 548 (6th Cir. 2002) ("The ALJ need not decide or discuss uncontested issues, the ALJ need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record") (internal quotation omitted).

## RECOMMENDATION

In light of the foregoing, the Magistrate Judge RECOMMENDS that the Court DENY Plaintiff's First Motion for Judgment on the Record (Docket # 15); AFFIRM the Commissioner's final decision; and DISMISS Plaintiff's complaint.

Any party has fourteen (14) days from receipt of this Report and Recommendation in which to file any written objections to it with the District Court. Any party opposing said objections shall have fourteen (14) days from receipt of any objections filed in which to file any responses to said objections. Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *Thomas v. Arn*, 474 U.S. 140, 149-50 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004).

---

discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis…. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved."